UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| JAMES HICKS,<br><br>            Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>            Defendant. | Case No.: 1:25-cv-01051-SOH<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1.  FCRA, 15 U.S.C. § 1681 *et seq.* |

Plaintiff James Hicks ("Plaintiff"), by and through his counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. against Defendant Experian Information Solutions, Inc. ("Experian"), referred to as "Defendant" "respectfully sets forth, complains, and alleges, upon information and belief, the following:

### INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendants. Plaintiff contends that the Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

### JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 731 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

1

3. Venue in the Western District of Arkansas is proper pursuant to 28 U.S.C. § 791 because, Plaintiff resides here, Defendant regularly transacts in business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in the State of Arkansas, County of Union.

6. At all times material hereto, Plaintiff was a "consumer" as said term is defined under 15 U.S.C. § 1681a(c).

7. Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served through its registered agent, C T Corporation System, located at 320 S. Izard Street, Little Rock, AR, 72201.

8. During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Arkansas and conducted business in the State of Arkanas on a routine and systematic basis.

9. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports

to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendant was not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL BACKGROUND

### *The Role of Credit Reporting Agencies*

12. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant, one of the major consumer reporting agencies (at times referred to collectively as "the CRAs or Defendant" and individually as a "CRA") in the United States,

3

regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

17.     Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendants, and other information must be independently gathered by Defendants, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

19.     Defendant also obtains information from other CRAs, who commonly share information.

20.     Defendant regularly seeks out and procure consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Defendant sells to third parties for a profit.

21. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

22. Defendant's unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

23. Defendant know the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in its own files.

24. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

25. The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

26. FICO Scores are calculated using information contained in the Defendant's consumer reports.

27. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

28. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues

to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

      b.      The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

29.      Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports.

30.      DTI compares the total amount a consumer owes to the total amount a consumer earns.

31.      Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

32.      A consumer's income, however, is not included in their consumer report; only the amount of debt is included.

33.      The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

34.      Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in bankruptcy.

35.      Defendant is well aware that the effect of a Discharge Order in Chapter 7 Bankruptcy is that all statutorily dischargeable debts are discharged.

36. Furthermore, Defendant is on actual notice of bankruptcy given that the bankruptcy is being reported on the credit report as a public record.

37. However, Defendant regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

38. Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

39. Defendant regularly publish consumer information that conflicts with the information provided by data furnishers, included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

40. Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

41. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for their inaccurate consumer reporting following a Chapter 7 Bankruptcy Discharge, including failure to accurately report which debts were discharged.

42. Therefore, Defendant is on continued notice of their inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Plaintiff's Chapter 7 Bankruptcy*

43. On or around October 4, 2017, Plaintiff took out a loan with Colonial Auto Finance hereinafter may be referred to as "Colonial".

44. On December 30, 2021 Plaintiff filed a Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Western District of Arkansas, petition no. 1:21-bk-71786

45. The colonial was included in Plaintiff's Chapter 7 Bankruptcy.

46. The Plaintiff received an Order of Discharge for his bankruptcy on April 13, 2022.

47. Since the account was opened prior to Plaintiff's Chapter 7 Bankruptcy and because it was included in Plaintiff's Chapter 7 Bankruptcy filings, the balance has been discharged, and Plaintiff has no obligation to pay anything further on this Account.

48. Additionally, on or about July 13, 2020, Plaintiff took out a loan with Vanderbilt Mortgage, hereinafter may be referred to as "Vanderbilt".

49. Vanderbilt was not included in Plaintiff's aforementioned Chapter 7 Bankruptcy, rather a re-affirmation agreement was signed.

50. Since a re-affirmation agreement was signed during the bankruptcy proceedings the account has not been discharged.

*The Inaccuracies on Defendants' Consumer Reports*

51. The Plaintiff reviewed his credit reports after receiving his discharge from Bankruptcy.

52. These credit reports were created after Plaintiff received an Order of Discharge.

53. The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on the consumer reports prepared by the Defendant.

54. The credit reports list the Colonial account as a charge-off account with a balance of $6,126.00 with no mention that the Account was included and discharged in bankruptcy.

55. The Colonial account is reported as a charged off account without any mention of Plaintiff's bankruptcy, when it should be reported as discharged in bankruptcy with a $0 balance.

56. Defendants misrepresented the Colonial account by failing to report it as a debt discharged in Plaintiff's Chapter 7 Bankruptcy.

57. The credit reports also lists the Vanderbilt account as a charge-off account with the erroneous mention that the account was included and discharged in bankruptcy with a $0 balance.

58. Defendant misrepresented the Vanderbilt account by erroneously reporting it as a debt discharged in Plaintiff's Chapter 7 Bankruptcy, rather than reflecting that a re-affirmation agreement was signed in regards to this account.

59. Defendant knew or should have known about Plaintiff's Chapter 7 Bankruptcy and which accounts were discharged in Plaintiff's bankruptcy and which specific accounts were and were not discharged in Plaintiff's Chapter 7 Bankruptcy.

60. In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendant through multiple sources such as PACER, but Defendant failed to review those sources or knowingly rejected them.

61. Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff received an Order of Discharge from his Chapter 7 Bankruptcy.

62. However, Defendant failed to accurately report the Plaintiff's accounts.

63. Upon information and belief, Defendant received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information

through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

64. Defendant also obtains information from other CRAs (who commonly share information).

65. Defendant is aware that CRAs are generally required to report accounts that were actually discharged in the bankruptcy proceedings as included and discharged in bankruptcy.

66. Defendant should have reported the Colonial account with a zero balance and discharged in Plaintiff's Chapter 7 Bankruptcy.

67. Instead, Defendant incorrectly reported the Colonial account as derogatory charge-off account with a balance.

68. Defendants inaccurately reported the Colonial account and failed to properly consider the Plaintiff's Chapter 7 Bankruptcy and the affect it had on the relevant account.

69. If not patently inaccurate, the Defendants inaccurate reporting of the Colonial account is materially misleading.

### *Plaintiff's Damages*

70. As a preliminary matter, Defendants failed to report the Colonial account accurately because they are reporting as a charge-off with a balance and not that it was discharged in Plaintiff's bankruptcy.

71. Additionally, the Defendant failed to report Vanderbilt account properly, since it not reflecting that a re-affirmation agreement was signed.

72. Plaintiff's creditworthiness is lowered because Defendant inaccurately reported these accounts.

73. As an individual attempting to improve her credit score for future credit transactions, the Plaintiff was harmed because of Defendants' inaccurate reporting of these accounts and Defendant misinformed third parties about the effect of the Plaintiff's Chapter 7 Bankruptcy.

74. Plaintiff's consumer credit file and consumer reports were reviewed by numerous entities after the discharge of her bankruptcy; those entities viewed the erroneous information published by Defendants.

75. As a direct result of Defendant's inaccurate reporting, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

76. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I
## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

77. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

78. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

79. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy accounts after a consumer receives a Discharge Order.

80. Defendant received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendants through sources of consumer information such as Lexis-Nexis, Defendant's own files, and information provided by data furnishers, yet Defendant misapplied that information.

81. Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who file Chapter 7 Bankruptcies.

82. Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

83. Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update accounts that were actually included in a bankruptcy, as required by 15 U.S.C. § 1681(e)(b).

84. Defendant knows the information that they report about consumers' bankruptcies is often inconsistent with public records and their own files.

85. However, Defendant failed to report the accounts accurately.

86. Defendant's failure to maintain and employ reasonable procedures to assure the information they report is accurate is particularly egregious because the Defendant

regularly and voluntarily search for consumer bankruptcy information to include in credit files.

87. Defendant knew or should have known that they are obligated, by the FCRA, to maintain and employ reasonable procedures to assure they report maximally accurate consumer credit information.

88. Defendant knew or should have known that they are obligated, by the FCRA, to update their consumer reports and the relevant tradelines.

89. Defendant knew or should have known that the effect of a Discharge Order in Chapter 7 Bankruptcy is to discharge debts that were created prior to the bankruptcy proceedings.

90. CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendant.

91. Therefore, Defendant has ample notice of their obligations under the FCRA and their continued use of unreasonable procedures.

92. If Defendant contends that they did not have sufficient notice, Defendant must justify their own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file for Chapter 7 Bankruptcy.

93. Defendant regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports they sell to other parties for a profit.

94. When Defendant received notice of Plaintiff's bankruptcy information, they had an obligation to ensure they reported Plaintiff's discharge and its effects with maximal accuracy, and to report accounts as included in the bankruptcy.

95. Unfortunately, Defendant willfully and consciously breached its duties as a CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

96. Despite knowledge of their legal obligations, Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

97. Defendant knows that a debt that was included and discharged in a bankruptcy should be reported as discharged on credit reports and not as a charged off account with a balance.

98. Defendant knew or should have known the information the reported information on the Accounts were inaccurate.

99. Defendant violated 15 U.S.C. § 1681e(b) by failing to report accurate information when the Defendant knew or should have known that the information Defendant were reporting was inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and/or reasonably available to Defendant.

100. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

101. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

102. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

103. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant for failing to report

Plaintiff's Chapter 7 Bankruptcy accurately and for failing to report the Account accurately, since it was discharged in Plaintiff's Chapter 7 Bankruptcy.

104. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

105. Defendant is a direct and proximate cause of Plaintiff's damages.

106. Defendant's actions are a substantial factor in Plaintiff's damages.

107. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

## JURY DEMAND

Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues presented in this Complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant Experian Information Services, Inc., for the following:

a) For declaratory judgment that Defendant violated the FCRA at 15 U.S.C. § 1681e(b).

b) For actual damages provided and pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

c) For statutory damages provided and pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

d) For punitive damages provided and pursuant to 15 U.S.C. § 1681n(a)(2);

e)     For attorney fees and costs provided and pursuant to 15 U.S.C. §§ 1681n(a)(3), and 1681o(a)(2);

f)     For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated: June 25, 2025                                                           Respectfully Submitted,

/s/ *Yaakov Saks*
**Stein Saks, PLLC**
By: Yaakov Saks, Esq.
One University Plaza, Ste 620
Hackensack, NJ 07601
Phone: (201) 282-6500
Fax: (201)-282-6501
ysaks@steinsakslegal.com